## TOWN OF OPHIR v. AULT.

No. 4353.    Decided June 4, 1926.    (247 P. 290)

1. WATERS AND WATER COURSES—STATUTE GIVING TOWNS JURISDICTION OVER STREAMS OF WATER USED FOR DOMESTIC PURPOSES HELD APPLICABLE TO TOWN, PART OWNER SELLING PORTION OF WATER TO INHABITANTS (COMP. LAWS UTAH 1917, §§ 786x2, 786x13). Comp. Laws Utah 1917, §§ 786x2 and 786x13, giving towns jurisdiction over streams from which water used for culinary and domestic use, *held* applicable to a town which owns 20,000 gallons per day, a part of which it uses for corporate purposes and sells remainder to inhabitants.

2. MUNICIPAL CORPORATIONS—UNCERTAINTY OF PART OF ORDINANCE DOES NOT RENDER WHOLE ORDINANCE VOID. That some parts of an ordinance are inoperative for uncertainty does not render entire ordinance void, but portion which is certain may be upheld as valid.

3. WATERS AND WATER COURSES—ORDINANCE PROHIBITING POLLUTION OF WATERS OF STREAM HELD CERTAIN AND VALID (COMP. LAWS 1917, §§ 786x2 AND 786x13). Ordinance of town of Ophir passed pursuant to Comp. Laws 1917, §§ 786x2 and 786x13, in so far as it prohibits any cattle, horses, sheep, goats, or hogs, to pollute stream of water used by inhabitants of town within 10 miles above point where water is taken for culinary and domestic purposes, *held* sufficiently definite and certain and valid.[1]

Appeal from District Court, Third District, Tooele County; *L. B. Wight*, Judge.

Owen Ault was convicted of unlawfully letting his sheep pollute certain water in violation of an ordinance, and he appeals.

AFFIRMED.

*Holmgren, Anderson & Russell* and *A. A. Duncan*, all of Salt Lake City, for appellant.

*P. C. Evans* and *F. B. Critchlow*, both of Salt Lake City, and *E. Le Roy Shields*, of Tooele, for respondent.

THURMAN, J.

Defendant was convicted in the justice's court of Ophir precinct, Tooele county, Utah, of the offense of unlawfully permitting his sheep to pollute the waters of Ophir creek, in said county, in violation of an ordinance of the plaintiff

---

[1]Salt Lake City v. Young, 45 Utah, 349, 145 P. 1047, Ann. Cas. 1917D, 1085.

Corpus Juris-Cyc. References:
[1] Waters 40 Cyc. p. 594 n. 29 New.
[2, 3] Municipal Corporations 28 Cyc. p. 372 n. 45; p. 374 n. 56.

town. From the judgment entered upon said conviction he appealed to the district court of Tooele county. In that court the case was tried upon an agreed statement of facts, in which both the town ordinance and the facts upon which the parties rely are set out at length. Upon the stipulation thus made the district court found the defendant guilty and entered judgment accordingly. The defendant appeals from the judgment, and among other contentions challenges the validity of the ordinance and the authority of the town to enact it. Although the stipulation referred to is somewhat lengthy, it will be more instructive to quote the main features literally than to undertake to merely reflect the substance. It reads as follows:

"It is stipulated that the plaintiff town is an incorporated town situate in Tooele county, Utah, in what is known as the Ophir canyon, and that it has a population of approximately 500 people. The inhabitants of said town obtain their water supply from a stream which runs down from a watershed to the north and east of the town; said watershed being in the form of a canyon, the rim of which is approximately 4 or 5 miles distant from the town. The width of the watershed is about 4 miles and the length about 5 miles. There are two main branches of the stream, one known as the right and the other the left fork. These branches are fed by various springs within the canyon, also by snow and rain. The normal flow of the stream is from 5 to 8 second feet. There are two pipe lines in the canyon, the supper intake of one being about 2½ miles above the town limits, and the other, or lower intake, being about ¾ of a mile above the town limits. The forks come together about 2½ miles above the town limits, where the water from both forks is collected into said upper pipe line, whence it flows through said upper pipe line for a distance of about 1¾ miles and then into the creek bed, from which it flows into what is known as the lower pipe line, the creek bed between the two pipe lines being about 200 feet in length, that is, there is 200 feet between the outlet of the upper pipe line and the intake of the lower pipe line. Such water as is not taken into the upper line, or as arises between the intake of the upper pipe line and the intake of the lower pipe line, is also diverted through the lower pipe line. The flow of water in the creek bed outside of said upper pipe line is intermittent and is of small quantity as compared with the main stream.

"The inhabitants of the town of Ophir obtain their water for culinary and domestic purposes from the lower pipe line, and it is the only source of supply for such purposes.

Appeal from Third District

"The upper pipe line is owned by the Ophir Creek Water Company, a private corporation, and the town has no interest therein. This private corporation has nothing to do with supplying water to the town. The lower pipe line is owned by Ophir Hill Consolidated Mining Company, also a private corporation. This company maintains this pipe line primarily for the development of power for its own purposes and does not act as a distributing agent for the town of Ophir in supplying water to the inhabitants thereof. That sundry persons, inhabitants of the town or Ophir, own individual water rights in the stream for culinary and domestic purposes and have the right to take said water through said pipe line of said Ophir Hill Consolidated Mining Company, by agreement with said company. That said town of Ophir owns in its own right, 20,000 gallons of water per day which it takes in the same manner as other individuals, but that the town itself does not act as a distributing agent except to the extent that it uses said 20,000 gallons per day for its own corporate purposes and rents or sells the right to use the remainder to individual inhabitants of said town. There is no distributing agency in said town except as above stated.

"All of the inhabitants of said town get their water for domestic and culinary purposes from said pipe line, taking the same either by virtue of a water right of their own or as tenants or as licensees of those who have such a water right, or by purchasing such water from the town itself, as above stated.

"It is hereby stipulated, that prior to the time of the acts hereinbefore mentioned, the said town of Ophir has duly passed the following ordinance:

" 'An ordinance for the purpose of protecting the water that is used for culinary and domestic purposes from pollution.

" 'Be it ordained by the board of trustees of the town of Ophir, Utah:

" 'Section 1. It shall be unlawful for any person to construct or maintain any corral, sheep pen, pig pen, chicken coop, stable, or other offensive yard or outhouse along any stream of water used by the inhabitants of the town of Ophir, or from which any water is used by the inhabitants of said town for culinary and domestic purposes anywhere within ten miles above the point where said stream is taken by said town, where the waste or drainage therefrom will naturally find its way into said stream of water; or to deposit, pile, unload or leave any manure, or other offensive rubbish, or the carcass of any dead animal along any stream of water used, in whole or in part, by the inhabitants of said town anywhere within ten miles above the point where said stream is taken, where the waste or drainage therefrom will naturally find its way into said stream of water; or to drive

or permit, or cause any other person to drive any loose cattle, horses, sheep, goats or hogs through any canyon from the stream of which water is or shall be taken for the use of the inhabitants of said town of Ophir, or to permit any cattle horses, sheep, goats or hogs through any canyon from the stream of which water is or shall be taken for the use of the inhabitants of said town of Ophir, or to permit any cattle, horses, sheep, goats or hogs to remain in or near, or to pollute any stream of water used by the inhabitants of said town anywhere within ten miles above a point where said water is first taken by the said town for culinary and domestic purposes, whether said stream is used in whole or only in part.

" 'Section 2. Any person violating any of the provisions of this ordinance shall be deemed guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not to exceed $99.00, or by imprisonment in the town jail for not to exceed three months, or by both fine and imprisonment.

" 'Section 3. This ordinance is declared to be an emergency measure, necessary for the immediate preservation of the health and safety of said town of Ophir; that it is necessary that it shall become immediately operative for the reason that divers persons are driving, herding and maintaining sheep and other live stock in the canyon from which flows the streams that are used by the town of Ophir for culinary and domestic purposes, within ten miles above a point where the water is taken, and permitting said live stock and sheep to remain in and near, and to pollute said streams and to make them unfit for culinary and domestic purposes and a menace to the health of said town.

" 'Section 4. This ordinance shall take effect immediately after its passage.

" 'Passed by the trustees of the town of Ophir, Utah, this second day of October, 1922.'

"That the same was at all times hereinafter mentioned in full force and effect. It is understood that this statement shall not be construed as an admission by the defendant that the town had the power or authority to pass the same or that the same is in any manner valid.

"It is stipulated that on the 11th day of September, 1924, the defendant Owen Ault was the owner of and in possession and control of about 2,000 head of sheep; that on said date the said defendant knowingly did permit said 2,000 head of sheep to pasture along and upon the banks of said stream and to wade into and drink from said stream and to run at large upon the land adjacent thereto, where the waste and drainage therefrom finds its way into said stream, and to drop their excreta into said stream and upon the banks thereof and to pollute said stream.

"That said acts as above mentioned were committed above the intake of the upper pipe line above mentioned, and within a half mile thereof, which is outside of the corporate limits of said town of Ophir, as above stated."

Appellant challenges the validity of the ordinance on the following grounds: (1) It is not authorized by law; (2) it is void for uncertainty; and (3) it is unreasonable.

1. Comp. Laws of Utah 1917, §§ 786x2 and 786x13, confer upon incorporated towns the following powers:

"786x2. To make regulations to secure the general health of the town; to prevent the introduction of contagious, infectious, or malignant diseases therein and to make quarantine laws and enforce the same within the corporate limits and within one mile thereof; to prevent, abate, and remove nuisances, and to adopt such other measures for the preservation of the public health as it may deem proper."

"786x13. To lay out, construct, open, and keep in repair canals, water ditches, or water pipes to conduct water for artificial light and power purposes, and to construct, own, and operate such artificial light and power plants; or water pipes for irrigation, domestic, or other use for the inhabitants of such town. For the purpose of protecting the water that is used for culinary and domestic uses from pollution, their jurisdiction shall extend over the stream or source from which the water is taken for ten miles above the point from which it is taken from the natural stream, and to annually assess and collect a special tax, of not to exceed 4 mills, for such purposes upon all the property in said town."

The first section above quoted is not referred to by appellant in his brief.

Appellant contends that the last section above quoted applies only to cases where the town is the owner of the waters in question, or, at most, where it is the distributing agent for the inhabitants.

Section 786x2 is important as manifesting the intention of the Legislature to confer upon the town broad powers "for the preservation of the public health."

Appellant's most strenuous objection to the ordinance is that it does not come within the purview of section 786x13,

supra, for the reasons above stated. It must be conceded that the language of that section is susceptible of the interpretation that it applies only where the town owns or distributes the water. But even if such be the true interpretation, it does not necessarily follow that the town must own and distribute all the water of the stream. It is sufficient if the town owns or distributes a part only. It is stipulated that the town owns 20,000 gallons per day, a part of which it uses for corporate purposes and sells or rents to its inhabitants the right to use the remainder. No matter how small this quantity may be, in order that it may be pure and fit for use, it is necessary that the stream from which it is taken should be safeguarded against contamination and pollution. It would seem, therefore, that appellant's contention that section 786x13 does not apply to the conditions existing in the instant case, even upon his own theory, flies in the face of the stipulation which concedes that the town is part owner of the stream.

2. Is the ordinance uncertain? Some portions of it appear to be more or less indefinite and uncertain, perhaps too much so to become effective and operative as an ordinance; but it does not follow that because some parts of an ordinance are inoperative for uncertainty that therefore the entire ordinance is void. The latter part of section 1 of the ordinance appears to be the part upon which the prosecutor relies for conviction. It makes it unlawful:

"To permit any cattle, horses, sheep, goats or hogs to remain in or near, or to pollute any stream of water used by the inhabitants of said town anywhere within 10 miles above a point where said water is first taken by said town for culinary and domestic purposes, whether said stream be used in whole or only in part."

The provision we have quoted is undoubtedly definite and certain, in that, in express terms, it attempts to prohibit the actual pollution of the water. To that extent, at least, the ordinance is not void for uncertainty. There is no substantial reason why that portion of the ordi-

nance should not be upheld as valid, even though other portions may be uncertain. The rule is well stated in 10 R. C. L. at page 815:

"Ordinarily, an ordinance in excess of the powers of the municipality is void as a whole and not merely as to the excess. This principle, however, would have no application to an ordinance in which the improper matters could be clearly distinguished and separated from those properly embraced. The inclusion of matters clearly beyond the competency of a muncipality ought not to be treated as beclouding those as clearly within that competency, or as making the ordinance uncertain. Things indubitably incompetent, and in themselves perfectly certain, should simply be treated as expunged, or nonexistent. Accordingly, when the provisions of an ordinance are separable and it may be fairly presumed that the city council would have enacted one part without the other, the whole ordinance will not be declared void because of the invalidity of a part."

In the instant case the complaint alleges:

"That said defendant, Owen Ault, being then and there the owner and in possession of 2,000 head of sheep, more or less, did unlawfully and wilfully, then and there, on said 11th day of September, 1924, permit said 2,000 head of sheep, more or less, to pollute the stream of water that is used by the inhabitants of said town for domestic and culinary purposes at a point that is less than 10 miles above the point where said stream is taken by said town for the use of the inhabitants thereof; and said defendant did unlawfully and wilfully permit said sheep to be at all times accessible to said stream, and to pasture along and upon the banks thereof, and to wade in and drink from the same, and to drop their excreta into said stream, and to run at large upon the tract of land adjacent to said stream where the waste and drainage therefrom naturally finds a way into said stream, contrary to the provisions of an ordinance of said town of Ophir, Utah, passed and in effect on the 2nd day of October, 1922."

From the stipulation entered into between the parties, it appears that defendant at the time and place alleged in the complaint did actually permit the things complained of in the complaint. If the sheep wading in the stream, drinking therefrom, and dropping their excreta therein, did not pollute the water, it will at least be conceded that the sheep in that regard did all that could reasonably be expected.

What has been said as to the uncertainty of the ordinance applies with equal force to the contention made that it is unreasonable. It certainly is not unreasonable in making it unlawful to permit an actual pollution of the water. Whether or not other provisions of the ordinance are so uncertain and indefinite as to render it inoperative and ineffectual is not necessarily involved in the case at bar. Even if such questions were involved, we would not deem it necessary to enter upon an extended review thereof, in view of the exhaustive consideration given the matter by this court in *Salt Lake City* v. *Young*, 45 Utah, 349, 145 P. 1047, Ann. Cas. 1917D, 1085, where similar questions were involved.

The court is of opinion the ordinance in question is valid as far as concerns the offense charged in the complaint, and that the proof of defendant's guilt is conclusive.

The judgment is affirmed, at appellant's cost.

GIDEON, C. J., and FRICK, CHERRY, and STRAUP, JJ., concur.